IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Andrew Williams,               )  Civil Action No.: 2:10-1546-RMG-BHH
                               )
          Plaintiff,  )
                               )
           vs.        )  **REPORT AND RECOMMENDATION**
                               )  **OF MAGISTRATE JUDGE**
United States Services, Inc.,  )
                               )
         Defendant.  )
                               )
                               )
                               )

     This matter is before the Court on the defendant's motion for summary judgment [Doc. 32] pursuant to Federal Rule of Civil Procedure 56.  The plaintiff has pled a failure-to-accommodate claim, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

     The plaintiff began his employment with the defendant in July 2000, and was most recently  employed as a package car driver in the Charleston, South Carolina package center. (Pl. Dep. at 47, 137.) In or about February 2005, while attempting to climb a loading dock at the Charleston package center, the plaintiff slipped and injured his knee. *Id.* at 50. In the years between his reported injury and March 2009, the plaintiff underwent three separate knee surgeries, in Fall 2005, Summer 2006 and Summer 2007.  *Id.* at 52, 58-59. During this time, the plaintiff received workers' compensation benefits and was provided with medical leaves of varying lengths. *Id.* at 332-33.  The plaintiff returned to work for only a small portion of this period.  *Id.*

On or about February 25, 2009, the plaintiff made a request for a job-related accommodation from the defendant. (Pl. Dep. at 93-94, 97, Ex. 9 thereto.)  The plaintiff's request for accommodation and the interactive process between the parties was handled in accordance with the defendant's ADA Procedure. (Flowers Decl. ¶ 14.)  On May 26, 2009, the plaintiff and defendant conducted, what the parties refer to as, a checklist meeting.  *Id.* ¶ 15.  Possible accommodations and reassignments were discussed at the meeting.  *Id.* ¶ 16.  The defendant subsequently conducted an investigation to identify a vacant and reasonable accommodation.  *Id.* ¶ 18.

As will be discussed, at least one position was identified by the defendant but the employee union rejected the transfer of the plaintiff to it.  The defendant was not otherwise able to find a vacant and reasonable accommodation or reassignment. (Flowers Decl. ¶ 21.) Notwithstanding, on July 24, 2009, the defendant indicated that it would continue to look for such a position for six months, through January 24, 2010.  *Id.* ¶ 23.  Before expiration of that period, on August 25, 2009, the plaintiff filed his charge of discrimination with the EEOC. (Pl. Dep. at 199, Ex. 20 thereto.)

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an

adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## ANALYSIS

The plaintiff has made one claim that the defendant failed to provide him with a reasonable accommodation of his alleged disability. (Compl. ¶¶ 54-64; Pl. Dep. at 207-08, 317.)   The parties concur that to succeed on a failure-to-accommodate claim, a plaintiff must show that (1) he was an individual who had a disability within the meaning of the statute; (2) the employer had notice of his disability; (3) with reasonable accommodation he

3

could perform the essential functions of his or another position; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). The defendant objects that the plaintiff can create issues of fact either as to disability element or any failure of the defendant to make good faith efforts to accommodate it.

## I.    Disability

The defendant first contends that the plaintiff was not disabled within the meaning of the Act. The plaintiff must necessarily come forward with evidence that he was disabled at the time of the defendant's alleged failure to provide a reasonable accommodation. *See Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. Appx. 472, 479 (4th Cir. 2010) ("In order to survive summary judgment, [a plaintiff] has to produce evidence showing that he is both qualified and disabled."); *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir. 2002) ("[I]n order to come within the ADA's protected class, a plaintiff must first show that she is disabled within the meaning of the Act.").

There is some dispute between the parties about the nature of the disability question, whether legal or factual. As the defendant contends, controlling Fourth Circuit law states fairly plainly that "[t]he question of whether a plaintiff is disabled under the ADA, and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001). The plaintiff rejoins with two subsequent decisions that might call *Hooven-Lewis* into some doubt, *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 464-65 (4th Cir. 2005)) and *Cochran v. Holder*, 2011 WL 2451724, at **4-5 (4th Cir. June 21, 2011). The plaintiff offers that the Fourth Circuit's treatment of the issue in *Cochran* and *Taylor* indicates a tendency to view the question of whether an individual is disabled as a mixed question of fact and law. Other circuits agree with this view. *See, e.g., Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007); *Weisberg v. Riverside Twp. Bd. of Educ.*, 180 Fed. Appx. 357, 360 (3d Cir.

4

2006) ("The question of whether an individual is substantially limited in a major life activity is a question of fact"); *Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1156 (9th Cir. 1999) ("There exists a question of fact as to whether he has a 'physical . . . impairment that substantially limits' his ability to work, and thus, whether he is disabled within the meaning of the ADA."); *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) ("In that plaintiff does suffer from a physical impairment, we proceed to consider whether plaintiff has presented evidence that creates a question of fact on the issue of whether [her condition] substantially limits one of her major life activities.").

It is not, however, that the issued is mixed; instead, there is, in fact, more than one query – one of fact and one of law.  The tenth Circuit has said it most clearly:  "

> Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide. Ascertaining whether the impairment substantially limits the major life activity is a question of fact for the jury, although a court is not precluded from deciding the issue on a motion for summary judgment.

*Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 765 n.1 (10th Cir.2006).  In other words, "disability" and "major life activities" are legal determinations.  Can the degree of this impairment legally be considered disability?  Does this particular activity constitute a major life one?  But, whether the *degree* of limitation alleged actually exists and what kind of an effect on a major life activity is present, seems  necessarily a fact issue.  It cannot be any other way.

This does not make *Hooven-Lewis* wrong or *Cochran* and *Taylor* some departure. Quite to the contrary.  They speak, taken together, to paint the whole picture.  *Hooven-Lewi*s correctly states that "whether a plaintiff is *disabled* under the ADA, and therefore can bring a claim under the statute, is a question of law for the court . . . ." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268.  This holding is not incompatible with the necessary and presaging determinations as to what degree of impairments is actually – that is to say

factually –  present.  Illustratively, it is not any sort of legal decision to decide whether an alleged physical condition causes a 5% or a 75% ambulatory impairment.  It is, however, a legal decision to say that a 75% impairment is disability under the ADA where 5% is not.  In *Hooven-Lewis*, the Fourth Circuit seems to have concluded that the plaintiff was not disabled because he was only limited in performing a particular job as opposed to a full range of work.  *Hooven-Lewis*, 249 F.3d at 269.  The case does not suggest that there was any evidentiary dispute that the work restriction was narrow and not broad, as the Court found.  *Id.* The Court, therefore, was free to make the determination as to whether that small degree of undisputed limitation legally constituted disability. *Id.*  It apparently did not.  That is not the same thing as foreclosing altogether another set of circumstances, as in cases like *Cochran* and *Taylo*r, where underlying factual disputes as to the degree of limitation are present.

To borrow from Social Security law, the conclusion that a claimant is "disabled" is solely the legal province of the administrative law judge. *See* SSR 96-2p.  A physician may not make that kind of pronouncement as any sort of binding matter of law.  But, the physician is capable of identifying what sort of physical attributes and deficiencies are indeed present.  In the same way, a jury or ultimate factfinder is not permitted to *call it* disability but if competing evidence exists as to the degree of physical limitation present, whether 5 or 75%, surely the Fourth Circuit does not mean to reduce that particular determination to a legal one.  It is not.  The Court, therefore, would follow the whole teaching of the Fourth Circuit in this respect, aided by the logic of the inquiry itself, which appears inescapably to demand a factual inquiry and an ultimate legal one.  That is not to say, however, that the plaintiff will always be able establish sufficient facts, or that the facts established and credited to their fullest extent, will be sufficient to survive summary judgment where the Court stops short of a formal legal determination as to disability.  It is simply to acknowledge that in certain instances, such might be the case.

Turning to the actual disability merits, effective January 1, 2009, the ADA was revised by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). *See Shin*, 369 Fed. App'x at 479 n.14 (citing ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553). Although the changes made by the ADAAA are generally viewed as expanding the universe of ailments that may qualify as a "disability" under the statute, the simple fact that an individual has been diagnosed with an impairment or has some limitation on physical activity is still not sufficient to carry his burden to demonstrate that he is disabled under the ADA. *See Petruniti v. Cablevision*, 2009 WL 5214495, at *5 n.3 (E.D.N.Y. Dec. 30, 2009) (holding that mere evidence of the plaintiff's hearing impairment was not sufficient to establish a disability under either the previous statutory standard or the standard as modified by the ADAAA); *Rumbin v. Ass'n of Am. Med. Colls.*, 2011 WL 1085618, at *10 (D. Conn. March 21, 2011) (holding that the plaintiff's ocular impairment did not constitute a disability under the post-ADAAA standard without evidence that the impairment substantially limited one or more major life activities). To the contrary, a plaintiff proceeding under the ADA still must offer evidence sufficient to demonstrate that he (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment;[1] or (3) is regarded as having such an impairment.[2] *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g).

The plaintiff has only seriously argued actual disability, in satisfaction of the statute – that one or more of his major life activities is substantially limited. He does not seem to

---

[1] An individual has a record of a disability "if the individual has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

[2] Under the "regarded as" formulation, a plaintiff must show that the employer "entertain[ed] misperceptions about [him]" by believing he had a "substantially limiting impairment" that he did not in fact have or that was not "so limiting." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999) *superseded on other grounds by* U.S. Pub. L. 11-325 (2009); 29 C.F.R. § 1630.2(g)(1)(iii).

base his claim on either a history of disability or having been regarded as disabled by the defendant. In a footnote he does state, "Additionally, Plaintiff is disabled because as a result of having three knee surgeries and a long record of permanent restrictions to his knee, he has a "record of" a physical impairment well known to his employer that substantially limits his major life activities. *See* 29 C.F.R. § 1630.2 (g)(1)(ii). The argument is not further pursued. In passing, the plaintiff also would suggest that the defendant only initiates its interactive process with an employee where disability is already present and, therefore, the very existence of an interactive process, in this case, necessarily concedes disability. (Pl. Resp. at 5.) To the Court, this is the plaintiff appealing to a kind of estoppel argument (which the Court would not accept) rather than a "regarded as" claim, specifically. The plaintiff deploys neither the language of, nor the evidentiary case for, that theory, otherwise, and the Court would not consider the claim in that vein. Actual disability is principally at issue.

Regarding the plaintiff's disability, he alleges that his knee pain substantially limits the following "major life actvities": sleeping, sitting, lifting, and working. 29 C.F.R. § 1630.2(I). It is true that examples of "major life activities" now include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To this end, the plaintiff has submitted some objective medical evidence of his impairment. He underwent a functional capacity exam (FCE), in April 2008, and was found, by Dr. James R. DeMarco, to be at maximum medical improvement as of April 14, 2008. (Pl. Ex. C at 178-79.) Dr. DeMarco concluded that the plaintiff had a permanent impairment rating of 17% to the left leg with permanent restrictions on lifting. *Id.* at 178. Specifically, he found that the plaintiff could not leg lift more than 20 pounds and could only torso lift 5-10 pounds. *Id.* Dr. Demarco concluded that the plaintiff

was "unable to return to his current occupation as a truck driver for UPS and . . . [would] need to find another occupation or title with light duty demands." *Id.*

The plaintiff has also offered subjective testimony as to the various major life activities impaired. First, the plaintiff contends he is substantially limited in sleeping because he wakes up any time he rolls over on his stomach (because of the pressure on his kneecap); occasionally suffers from restless leg syndrome in the middle of the night (during which his legs start kicking on their own); and suffers from throbbing, nerve sensations, and dull aches which prevent him from sleeping and wake him up from his sleep on a nightly basis. (Pl. Dep. at 211-213.) Further, a few times each week, he has to get up in the middle of the night and walk around in order to stretch his knee. *Id.* As a result, he contends that he does not get more than 2 to 3 hours of uninterrupted sleep each night. *Id.*

In regards to sitting, the plaintiff claims that he cannot sit with his legs at a 90 degree angle for longer than 20 minutes without experiencing unbearable pain. *Id.* at 214-216. He also claims to have difficulty getting up and down from a deep-seated position because of the pain associated with trying to lower himself backwards and pull himself up. *Id.* Specifically, the plaintiff testified that this affected his ability to "get[] on and off the toilet . . . [he] constantly ripp[ed] the towel rack off the wall because [he] was using it to brace [himself] and then to kind of pull [him]self up, too." *Id.* at 216.

The plaintiff also claims to be substantially limited in the major life activity of lifting. Consistent with Dr. Demarco's opinion, the plaintiff claims to be restricted from lifting over 20 pounds. *Id.* at 219-220. This restriction is linked to his inability to squat. *Id.* The plaintiff also claims to be substantially limited in the major life activity of working as a result. The plaintiff cannot work in any job which requires lifting of 20 pounds. As a result, he contends that he cannot work in the entire class of "heavy labor" jobs.

Respectfully, the plaintiff's evidence is less than persuasive. It is almost exclusively subjective. Although the Court has not identified substantial instruction on the matter, the

9

plaintiff's own testimony, however, may be sufficient to survive summary judgment. *See, e.g., Clark v. Whirlpool Corp.*, 109 Fed. Appx. 750, 754 (6th Cir.2004) (finding under state statute analogous to ADA, "plaintiff's subjective complaints of disabling pain may be sufficient to prove that she was 'handicapped,' as that term is defined in the statute; there is no requirement that the plaintiff bolster that testimony with corroborating medical evidence"). *But see Steinacker v. National Aquarium in Baltimore*,1997 WL 311519, at *1 (4th Cir. June 11, 1997) ("Because there is no evidence beyond Steinacker's subjective beliefs to prove a prima facie case of discrimination on the basis of perceived disability, the district court properly granted summary judgment on this claim."). Even still, the subjective testimony seems dubious.

As the defendant contends, the plaintiff does not offer any evidence or legal authority that more than 2-3 hours of uninterrupted sleep is either unusual in the general population or otherwise some substantial limitation on sleeping. He just claims that it is. Concerning his ability to sit, the plaintiff has admitted that so long as he is able to bend his left leg occasionally, he can remain seated for hours without issue. (Pl. Dep. at 214-15.) Finally, concerning lifting and working, the defendant is right that the plaintiff has sort of whole-cloth concluded he cannot perform the entire class of "heavy labor jobs." (Pl. Resp. at 8.) While it seems right that disqualification from an entire class of jobs likely constitutes disability, *see Hooven-Lewis*, 249 F.3d at 269, the plaintiff has only summarily alleged that such is the case here. The mere fact that he has a lifting restriction is insufficient to establish it.

The defendant also challenges the effectiveness of the one piece of objective medical evidence in the record. The defendant emphasizes that the opinion of Dr. DeMarco – that the plaintiff had 17% impairment the left leg with permanent restrictions on lifting and that the plaintiff was "unable to return to his current occupation as a truck driver"  was rendered nearly a year before the actual request for accommodation in March 2009. (Pl.

10

Ex. C at 178-79.)  The defendant contends, therefore, that the opinion says very little about the plaintiff's actual condition during the relevant period.

Because the ADA amendments are not retroactive and because their effective date is of relatively recent occasion, few courts have significantly and instructively applied the "substantially limits" standard of the ADAAA.  The Court has, therefore, had difficulty formulating the precise dimensions of the analysis required.  The Court, however, is reminded that the ADAAA intended the plaintiff's burden to be light.  The federal regulations state that: "the term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the ADA" and is "***not meant to be a demanding standard***"; it is not necessary that an impairment "prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting"; "the determination of whether an impairment substantially limits a major activity requires an individualized assessment . . . [and] the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the [pre-ADAAA] standard; "an impairment that is episodic [] is a disability if it would substantially limit a major life activity when active"; and, "an impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. §§ 1630.2(j)(i), (ii), (iv), (vii), (viii) (emphasis added).

With this regulatory instruction in mind, the Court would recommend that issues of fact narrowly exist as to whether the degree of impairment alleged, actually exists.  The medical opinion of Dr. DeMarco, although stale by nearly a year, certainly speaks prospectively and is some evidence of permanent impairment.  A jury might believe it and the subjective accounts of the plaintiff.   It seems permissibly a genuine issue of fact as to the degree of limitation present.  Moreover, the Court is inclined to recommend that, as a matter of law, if a 17% impairment rating is a fact found by the jury as established by the

evidence, with a permanent restriction on lifting, that the plaintiff is substantially limited in the various major life activities as alleged.   This seems the prudent determination in light of the early evolutionary state of our post-ADAAA jurisprudence.  Unfortunately, it is a short-lived legal concession, to the plaintiff's benefit, that issues of fact exist as to this element of his claim, because the Court cannot conclude, ultimately, that the defendant failed in its obligations to seek and offer a reasonable accommodation of the plaintiff's disability, if any.

## II.    Reasonable Accommodation

Under the ADA, an employer must make "reasonable accommodations" for a disabled employee, unless the company can demonstrate that the accommodation "would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A).  "The ADA does not require that the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are 'reasonable.'" *Schneider v. Giant of Md., LLC*, 389 Fed. Appx. 263, 271 (4th Cir. 2010) (citations omitted).  "The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin*, 369 Fed. Appx. at 481.   The Fourth Circuit has found that the ADA does not require reassignment "when it would mandate that the employer bump another employee out of a particular position." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir.2001). An employer is not required to violate another employee's rights in favor of an employee with a disability in order to give the disabled employee a reasonable accommodation. *Id.* at 353-54; *see also Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995) ("[ W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled").

### A.    The Plaintiff's Original Position

The plaintiff first contends that he can still perform the essential functions of his original position as a package car driver with certain accommodations. There is no debate in the record that package car drivers are required, as part of the essential functions of their position, to be able to lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds, and to bend, stoop, crouch, squat, climb, stand, sit, walk and turn/pivot for up to 9.5 hours a day, 5 days per week. (Flowers Decl. ¶ 5, Ex. 1; Pl. Dep. at 81-82, 205-206.) As of May 2009, the plaintiff himself claimed to be restricted from lifting more than 20 pounds or engaging in repetitive squatting or climbing, and that these restrictions were deemed to be permanent by the plaintiff's treating physician. (Pl. Dep. 100, Exs. 12, 16.)

The plaintiff, however, contends that he can perform the required work with some combination of the following accommodations:

• An automatic, rather than manual, transmission car;

• A step or load ladder to enter and exit the car;

• A "helper" employee to accompany the plaintiff and aid in lifting and carrying packages over 20 pounds; and/or

• A hydraulic lift on the truck to allow the plaintiff to ascend and descend the truck without climbing and a package dolly.

(Pl. Dep. at 301-04.)

The parties spend significant energy debating the availability of an automatic transmission car. The Court need not consider it seriously. By the plaintiff's own assessment, the car alone is an insufficient accommodation and, because other necessary accommodations are unreasonable, the availability of the automatic transmission car cannot be dispositive. The Court would note, however, without deciding, that if the only obstacle to accommodation was the availability of such a vehicle, it would be difficult for the undersigned to affirm any failure to accommodate, in such respect, as reasonable. The

13

defendant has emphasized a seniority preference in such vehicles, over which the parties quibble as to the plaintiff's eligibility.  All other things being equal, however, which plainly they are not, the defendant should get him an automatic transmission car.  But, as it stands, other requested and necessary accommodations were not reasonable.

Likewise, concerning a step or load ladder, regardless of the reasonableness of this accommodation, it is not, in itself, a complete solution.  Other accommodations, which will be discussed momentarily, are necessary but are themselves unreasonable.  The Court, therefore, need not consider the specific reasonableness of a step or load ladder.  Such an implement is unhelpful if the plaintiff still cannot move the actual packages.

Concerning a "helper" the plaintiff has not pursued this accommodation on summary judgment.  Even if he had, it would not be effective as reasonable.  The Fourth Circuit has expressly recognized that the ADA does not require an employer to hire an additional employee to perform the essential functions of the disabled employee's job.  *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997).

Lastly, the plaintiff suggests that the combination of an automatic lift on a package car, in conjunction with a dolly, would allow him to perform the essential function of delivering packages weighing up to 70 pounds. (Pl. Dep. at 302.)  The plaintiff does not explain the accommodation in any more detail.  Apart from the financial and logistical reasonableness of the proposal, the defendant raises doubts about its practical effectiveness.   The plaintiff has not explained how he might get the packages from the car shelf to the dolly or lift; from the lift back onto the dolly; from the dolly up stairs or over curbs; or from the dolly or ground to the customers themselves, without violating the lifting restriction.  On these precise grounds, it appears that the Fifth Circuit rejected the same accommodation from another UPS package car driver.  *See Guerra v. United Parcel Serv., Inc.*, 2001 WL 274296, at *2 (5th Cir. Feb. 13, 2001) (affirming dismissal of accommodation claim because "[e]ven if UPS were to provide Guerra with a lift and dollies, it is unclear how

Guerra would then be able to put the package on the dolly, bring the dolly up the stairs or lift the package off the dolly.") The Court would join in the conclusion that this type of accommodation is unreasonable because it is ineffective. The plaintiff's disability cannot reasonably be accommodated by modifications to his original position.

**B.    Reassignment**

The plaintiff has also requested accommodation through reassignment. Where, as here, an employee is unable to perform the essential functions of his or her current position with or without reasonable accommodation, the employee may be eligible for reassignment to a different position as an accommodation under the ADA. *See* 29 C.F.R. § 1630.2(o)(2)(ii); 29 C.F.R. Pt. 1630, App. at § 1630.2(o). Truthfully, the plaintiff has not offered any positions to which he might have been reassigned. Presumably based upon the checklist meeting of the interactive process and information exchanged in discovery, the defendant has anticipatorily identified both various positions to which the plaintiff might have expected a reassignment and the reasons why such reassignment was impossible or unreasonable. To these arguments, the plaintiff makes generalized arguments concerning the interactive process itself. The Court will address the reasonableness of the proposed job positions themselves and then say something more about the plaintiff's concerns, more broadly.

The defendant has put forward evidence that any positions, which required a transfer outside of Charleston, were necessarily prohibited by the collective bargaining agreement between itself and the employees' union. (Flowers Decl. ¶¶ 10, 25.) An employer is not required to violate the terms of a collective bargaining agreement or to otherwise depart from the employer's standard practices or policies governing reassignment in order to accommodate a disabled employee. *See* 29 C.F.R. Pt. 1630, App. at § 1630.2(o) (2011); *see, e.g., Marshall v. AT&T Mobility*, No. 2:10-cv-699, --- F. Supp. 2d. ---, 2011 WL 2192812, at *6 (D.S.C. June 6, 2011) (Gergel, J.) (holding that the employer's failure to

award an open position to the plaintiff as an accommodation for his disability did not violate the ADA because the plaintiff could not show that employees were typically given transfers to open positions without reapplication and/or being the most qualified in accordance with the employer's past practice); *Jackson v. Fujifilm Mfg. USA, Inc.*, 2011 WL 494281, at *2 (D.S.C. Feb. 7, 2011) ("The Fourth Circuit has not addressed whether the ADA requires an employer, as a reasonable accommodation, to give a current disabled employee preference in filling a vacant position when the employee is able to perform the job duties, but is not the most qualified candidate. However, most of the circuits which have examined the issue have found that the ADA is not an affirmative action statute and does not require such action." (citations omitted).)

The plaintiff suggests briefly in a footnote that the defendant has contradicted itself on this issue, somehow, because it, in fact, asked the Union for a transfer on the plaintiff's behalf even though it allegedly knew the transfer to be impermissible. (Flowers Decl. ¶ 20.) This is a remarkable position.  First, the plaintiff is somehow attempting to discredit the defendant, on this issue, by confessing the very thing he claims the defendant failed to do – seek a transfer out of Charleston on his behalf.  Second, in perfect harmony with the defendant's representations elsewhere, the Union indeed rejected the request for transfer. *Id.*  There is no inconsistency.  Quite to the contrary, the argument has reinforced the defendant's position as to the unreasonableness of any transfers to positions outside Charleston.

In the May 2009 checklist meeting, the plaintiff apparently identified some part-time supervisor, full-time and specialist positions within the defendant's Human Resources Department, Security Department, and/or Business Development Department. (Pl. Dep. at 135, Ex. 16 thereto at 4, 266-67, 269, 274, 296, 298.)  The plaintiff does not detail them, on summary judgment, with any greater specificity.  The defendant has put forward undisputed evidence that each of the part-time supervisor, full-time supervisor or specialist positions

identified by plaintiff was a management position.   (Flowers Decl. ¶ 26.)   That same evidence suggests that employees are eligible to be selected for these positions only after successfully completing the defendant's standardized promotion process and being placed into the pool of qualified applicants.  *Id.*

As the defendant argues, an employer is not required to promote an employee as an accommodation under the ADA.  *See* 29 C.F.R. Pt. 1630, App. at § 1630.2(o) ("It should also be noted that an employer is not required to promote an individual with a disability as an accommodation."); *Duvall v. Georgia-Pacific Consumer Prods., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010) ("[T]he ADA does not require the employer to reassign a disabled employee to a position that would constitute a promotion." (citations omitted)); *Woodruff v. Sch. Bd. of Seminole County, Fla.*, 304 Fed. Appx 795, 800 (11th Cir. 2008) ("[T]he ADA does not require an employer to promote a disabled employee to accommodate her."); *Prioleau v. Potter*, 2007 WL 2688608, at *5 (D.S.C. Sept. 10, 2007) ("The defendant does not have a duty to promote the plaintiff in order to accommodate the plaintiff's disability . . . .") (addressing Section 504 of the Rehabilitation Act of 1973).  Again, the plaintiff's only rejoinder, in a footnote, is that he had previously worked as a part-time supervisor and that his time as a package car driver was actually performed in anticipation of becoming a full-time supervisor position.  (Pl. Dep. at 42, 47-48; Pl. Brief at 30 n.22.)  Even taking this evidence as fully credible and his representation as true, it does not change the fact that these positions still constituted a promotion the defendant was not required by law to make, regardless of the plaintiff's prior or present qualifications for *them* and the defendant's prior or present plans for *him*.  But, more directly to the point, the plaintiff himself really has not identified any specific positions, their date of availability, their location of availability, their job descriptions, or any particular conversations with the defendant about them.  Respectfully, he barely argues the point.  (See Pl. Brief at 30 n.22.)  The plaintiff has not satisfied his burden in regard to any management positions and, to the extent he has, the

17

defendant had no obligation to accommodate him in this way as they undisputedly were promotive.

The defendant also preemptively addressed the reassignment of the plaintiff to the positions of feeder driver, air driver, and car washer.  Although the plaintiff generally complains that he has not, certainly as to these positions the defendant has offered evidence that significant lifting is an essential function of both positions.  Essential to the feeder driver is the ability to safely operate a standard transmission, to continuously sit for up to 10 hours a day, and to climb or squat intermittently for up to 10 hours a day, 5 days a week. (Flowers Decl. ¶¶ 6-7, Ex. 2.)  Essential to the air driver is the ability to be able to lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds, and to bend, stoop, crouch, squat, climb, stand, walk and turn/pivot for up to 5 hours per day, 5 days a week.  *Id.* ¶ 27, Ex. 7 thereto.  Essential to the car washer position is the ability to be able to, among other things, bend, stoop, squat, crouch, climb, stand, sit, walk, turn and pivot continuously for up to 3-5 hours per day, 5 days per week (part-time) or for up to 8-10 hours per day, 5 days a week (full-time), and to lift, lower, push, pull and carry wash equipment weighing up to 50 pounds.[3]  *Id.* ¶ 28, Ex. 8.  Nearly identical functionality is required for the positions of smalls sort, loader/unloader, preload operations

---

[3]  In regards to the car washer position, the defendant has also put forward evidence that there was no vacancy during the relevant period.  (Compare Flowers Decl. ¶ 34, with Pl. Dep. 255, 314.)  An employer is not required to bump another employee from his or her position in order to accommodate a requesting employee. *See Schneider*, 389 Fed. Appx at 271 ("This court has found that the ADA does not require reassignment 'when it would mandate that the employer bump another employee out of a particular position.'") (quoting *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001)); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled.").

In similar respect, the plaintiff has generally complained that the defendant did not notify him of vacancies.  But, as far as the Court can tell, the plaintiff has not offered any specific evidence of vacant positions that hew was not informed about and that were not otherwise unreasonable for the kinds of reasons identified in this recommendation.

cler, customer counter clerk, *Id.* ¶¶ 29, 30, 32-33 Exs. 9, 11,12 thereto; Pl. Dep. at 292-93, 295-96. This evidence is undisputed.

The plaintiff would complain that the defendant has not really met its burden to show that such lifting requirements are, in fact, essential as to all of these positions.  In regards to the customer counter clerk for instance, the plaintiff has at least put forward some competing evidence that one counter clerk, Nancy Fullerton, claims that she has never had to lift 70 pounds, as listed in her job description.  (Fullerton Decl. ¶ 6.)  But, concerning all other positions, the plaintiff has not  created any issue of fact as to the essential quality of lifting or other requirements.  The defendants' evidence stands almost entirely unrejoined.  In some respect, though, the defendant does acknowledge the plaintiff's point insofar as the defendant admits that the Smalls Sort position, under certain circumstances, does not require lifting 70 pounds.  *Id.* ¶ 19, Ex. 4 thereto.  Unfortunately, even here, the defendant's position and efforts in accommodation are only vindicated.  When such a position came available in Summerville, the Union apparently rebuffed the defendant's attempt to negotiate the transfer of the plaintiff to it.  *Id.* ¶ 20; Pl. Dep. at 177-79.

Although the Court may not weigh the evidence as to either volume or quality, the plaintiff surely cannot advance to trial, on the strength of this one anecdotal remark by a counter clerk, where a presentation of particularized evidence concerning numerous and other positions indicates such demands are, in fact, essential.  The plaintiff has made only generalized arguments about the "marginal" quality of certain lifting and climbing and squatting functions without discussing any position specifically or offering evidence in support.  Even where the defendant's proffer could have been more impressive, in the absence of countervailing evidence, it is more than enough.

Concerning whether any or all of these positions were actually vacant during the relevant time, it seems unnecessary to decide it.  The plaintiff has not made a persuasive

19

challenge in this regard, but, as discussed, there are other reasons to view the reassignments as unreasonable, whether available or not.

The Court would address a final and sort of thematic objection of the plaintiff – that the defendant did not do enough with respect to the interactive process. The plaintiff complains that the defendant was not proactive in recommending possible reassignments or identifying vacancies. The Court has examined the whole record in this respect and the arguments of the parties. The undersigned believes the evidence speaks of only one conclusion – that the defendant exceeded its legal obligations to the plaintiff. In fact, when the plaintiff filed his charge of discrimination, the defendant had still not terminated his employment and was looking for accommodation.

On or about March 4, 2009, the defendant received a request for a job-related accommodation from the plaintiff. (Pl. Dep. at 93-94, 97, Ex. 9 thereto.) The plaintiff's request for accommodation was handled in accordance with the defendant's ADA Procedure. (Flowers Decl. ¶ 14.) On March 6, 2009, Debbie Maslow, the District Occupational Health Supervisor for the South Atlantic District, sent the plaintiff a cover letter explaining the ADA Procedure, along with a Request for Medical Information form and an Employee Medical Authorization form. (Pl. Dep. at 97, Ex. 10.) Although the plaintiff failed to return a completed copy of the Request for Medical Information form within the two-week deadline suggested in Maslow's March 6, 2009 letter, the defendant did not terminate the accommodation process. *See id.* at 100, Ex. 11. Instead, on March 24, 2009, Maslow sent the plaintiff a reminder regarding the need to submit the completed form so that the defendant could evaluate his request. *Id.* The plaintiff submitted a completed copy of the Request for Medical Information form shortly thereafter. *Id.* at 101, Ex. 12 thereto.

In May 2009, after some additional correspondence with the plaintiff's physician to secure complete information regarding the plaintiff's medical condition and physician-imposed job restrictions the defendant requested to meet with the plaintiff to

20

review his relevant medical restrictions and determine whether there existed a reasonable accommodation that would enable him to perform the essential functions of the package car driver position or another, existing position in the Charleston package center. (Flowers Decl. ¶ 15; Pl. Dep. at 124-25, Ex. 15 thereto.)  This checklist meeting between the plaintiff and the defendant management personnel took place on May 26, 2009, at the Charleston package center. (Flowers Decl. ¶ 15.)  As part of the meeting, the plaintiff and the defendant management personnel discussed his current limitations and also reviewed a number of potential accommodations suggested by the plaintiff, including reassignment to a variety of other positions.  *Id.* at ¶ 16; Pl. Dep. 126-28, Ex. 16.  Subsequently and over numerous weeks, the defendant investigated various positions and identified the "smalls sort" position, which the Union rejected.  (Flowers Decl. ¶¶ 18, 19, 20.)

The defendant, however, was not able to find another vacant and reasonable accommodation or reassignment. (Flowers Decl. ¶ 21.)  Notwithstanding, on July 24, 2009, the defendant indicated that it would continue to look for such a position for six months, through January 24, 2010.  *Id.* ¶ 23.  Before expiration of that period, on August 25, 2009, the plaintiff filed his charge of discrimination with the EEOC.  (Pl. Dep. at 199, Ex. 20 thereto.)

The Court simply disagrees that any issues of fact or law exist as to whether the defendant met its obligation to investigate, in good faith, reasonable accommodations.  In fact, the Court finds that the evidence speaks only of substantial effort.

The Court regrets the circumstances of the plaintiff's injury and its apparent effect on his ability to work.  That sympathy, however, is an impotent legal substitute for evidence that the defendant actually failed to make or pursue a reasonable accommodation.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 32] be GRANTED and all claims dismissed with prejudice.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 31, 2012
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).